AO 243  (Rev. 2/95)

1:07CV272

SPIEGEL, J.

MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District Southern District of Ohio | |
|---|---|---|
| Name of Movant    Isadore Gennings | Prisoner No.    03394-061 | Case No.    cr-1-01-009 |
| Place of Confinement | | |
| Federal Correctional Institution, P.O. Box 1000, Loretto, Pa   15940 | | |

| UNITED STATES OF AMERICA | v. | Isadore Gennings |
|---|---|---|
| | | (name under which convicted) |

## MOTION

1. Name and location of court which entered the judgment of conviction under attack    United States District
   Court for the Southern District of Ohio

2. Date of judgment of conviction ___March 14, 2002___

3. Length of sentence ___240 Months___

4. Nature of offense involved (all counts) 21 U.S.C. §846 conspiracy, and 21 U.S.C. §1952
   Interstate Travel in the Aid of Racketeering, 21 U.S.C. §841
   Possession with intent to distribute

5. What was your plea? (Check one)
   (a) Not guilty          ☒
   (b) Guilty              ☐
   (c) Nolo contendere     ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury                ☒
   (b) Judge only          ☐

7. Did you testify at the trial?
   Yes  ☐     No  ☒

8. Did you appeal from the judgment of conviction?
   Yes  ☒     No  ☐

(2)

AO 243  (Rev. 2/95)

9.  If you did appeal, answer the following:

(a) Name of court    Sixth Circuit Court of Appeals

(b) Result    Remanded, in part, Affirmed in Part

(c) Date of result    U.S. v Gennings, 95 Fed Appx 795 (6th Cir. 2004) 4/13/02

10.  Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?
Yes ☐    No ☒

11.  If your answer to 10 was "yes," give the following information:

(a) (1) Name of court    N/A

(2) Nature of proceeding

(3) Grounds raised    N/A

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐    No ☒

(5) Result    N/A

(6) Date of result    N/A

(b) As to any second petition, application or motion give the same information:

(1) Name of court    N/A

(2) Name of proceeding    N/A

(3) Grounds raised    N/A

Case 1:01-cr-00009-SAS    Document 214    Filed 04/04/2007    Page 3 of 42

AO 243    (Rev. 2/95)

(4)  Did you receive an evidentiary hearing on your petition, application or motion?
     Yes ☐    No **XX**

(5) Result _____**N/A**_____

(6) Date of result ____**N/A**____

(c)  Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?

(1)  First petition, etc.        Yes ☐    No ☐    **N/A**
(2)  Second petition, etc.       Yes ☐    No ☐

(d)  If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

**N/A**

12.  State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.
     Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of these grounds.
(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.
(b)  Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one:    Ineffective assistance of Counsel

Supporting FACTS (state *briefly* without citing cases or law):    Sentence enhanced in violation of Booker, Please see attached Brief.

B. Ground two:    Ineffective Assistance of Counsel

Supporting FACTS (state *briefly* without citing cases or law):    Counsel failed to object to vindictive prosecution. See Brief.

C. Ground three:    Claims 3-6    Ineffective Assistance of Counsel

Supporting FACTS (state *briefly* without citing cases or law):    Counsel failed to investigate and prepare his Case resulting in multiple prejudices. See Brief.

(5)

D.  Ground four:  __Claim 7 - Ineffective assistance of Counsel__

Supporting FACTS (state *briefly* without citing cases or law):   __The cumulative effects of__
__Counsel's errors denied Petitioner effective Counsel as a whole__

B.  __Ineffective Assistance of counsel for failing to object to improper §851 filing.__
__(See brief for detailed argument.)__

13.  If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so
    presented, and give your reasons for not presenting them:

__Ineffective assistance of Counsel is properly raised the first__

__time on §2255__

14.  Do you have any petition or appeal now pending in any court as to the judgment under attack?
    Yes  ☐     No  ☒

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked
    herein:

    (a)  At preliminary hearing __Sentencing, A. Bishop, Esq. 1300 American Bldg.__

__30 E. Central Pky. Cincinnati, OH  45202; First Appeal, Spiros P.__
Cocoves, Esq. 610 Adams St. Toledo, Oh  43604
    (b)  At arraignment and plea

__Second Appeal, C.R. Hudson, Esq. Public Def. Cincinnati, OH. 45202__

    (c)  At trial _____ __N/A__

    (d)  At sentencing _____ __N/A__

AO 243    (Rev. 2/95)

(e)  On appeal _____**N/A**_____

(f)  In any post-conviction proceeding _____**Pro se**_____

(g)  On appeal from any adverse ruling in a post-conviction proceeding _____

_____**N/A**_____

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?

Yes ☐    No ☒

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐    No ☒

(a)  If so, give name and location of court which imposed sentence to be served in the future: _____

_____**N/A**_____

(b)  Give date and length of the above sentence: _____**N/A**_____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☐    No ☒

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

__3·27·07__
Date

_____
Signature of Movant

In The United States District Court

For The Southern District of Ohio

Western Division

| | | |
|---|---|---|
| Isadore Gennings, | ( | Civil No. 07- **107 CV 272** |
| Petitioner | ( | Criminal No. CR-1-01-009 |
| | ( | |
| VS. | ( | |
| | ( | Honorable S. Arthur Spiegal |
| United States of America, | ( | |
| Respondent | ( | |

Petitioner's Memorandum of Law With Points of Law
And Authorities In Support of His Motion
Pursuant To 28 U.S.C § 2255

Dated: 3-27-07

Respectfully Submitted,
*. Isadore Gennings*
Isadore Gennings, Pro Se
#03394-061
FCI Loretto
P.O. Box 1000
Loretto, PA 15940

1

## Introduction

Comes now the petitioner, Isadore Gennings, in pro se of counsel, and respectfully moves the court with this memorandum of law in support of his motion pursuant to 28 U.S.C. § 2255. The petitioner states the following facts in support thereof:

## Procedural History and Statement of Facts

On or about February 7, 2001 the petitioner was indicted by a Grand Jury with violations 21 U.S.C § 846 Conspiracy to Distribute a Controlled Substance, and a violation of 21 U.S.C. § 1952, Interstate Travel in the Aid of Racketeering, as well as Possession with Intent to Distribute, in violation of 21 U.S.C. § 841 and 18 U.S.C § 2.

The petitioner on or about April 5, 2001 pled guilty to a written plea agreement. However, the petitioner then moved to withdraw his guilty plea. A hearing was held on July 17, 2001 to withdraw the plea. This court ruled on July 26, 2001 that the previously entered plea agreement was withdrawn. Thereafter, on July 31, 2001 the petitioner again pled not guilty.

Following the aforementioned events, the Government reacted with retaliation and issued a superseding indictment on August 8, 2001 towards the petitioner only. On August 16, 2001 the petitioner pled not guilty again. This was not the end however of the Government's plan. On August 24, 2001 in an additional retaliatory act, the Government filed an enhancement notice pursuant to 21 U.S.C. § 851, which now exposed the petitioner to a 240 month Mandatory Minimum.

2

The alleged prior conviction from the Cook County Circuit Court is relied on by and through no more than a certified docket sheet.

The Cook County docket sheet does not imply either way what the charge is. It does state however, that on September 26, 1991 the court amended the charge and probation was issued. The criteria needed to establish whether the charge was even a felony are not present. The certified record only shows that information was filed. It cannot specifically state to what charge that may have been or reduced to.

In the aftermath of these events, a four-day jury trial began from November 13, 2001 to November 16, 2001. Petitioner was found guilty of all three counts. On March 14, 2002 the petitioner was sentenced to 240 months confinement. A timely notice of appeal was filed. The Sixth Circuit remanded for re-sentencing on the safety valve claim. On November 9, 2004 the petitioner was re-sentenced to the original 240 months. A new notice of appeal was filed. Thereafter counsel filed an Anders Brief and the sentencing and conviction were affirmed on May 4, 2006; again by the Sixth Circuit Court of Appeals.

Accordingly, this appeal timely follows.

The petitioner raises the following claims individually and cumulatively as errors on the Government and ineffective assistance of counsel, pre-plea, pre-trial, trial, sentencing, and during appeals.

3

Petitioner was Denied His Constitutional Right to Effective Assistance of Counsel

During all Stages of Proceedings, Therefore Violating His Fifth and Sixth

Constitutional Amendments.

1.)   Petitioner asserts that he should be re-sentenced pursuant to Booker V. United
      States.

2.)   Counsel rendered ineffective counsel in failing to object and assert the
      Government committed retaliatory and vindictive prosecution against the
      petitioner for withdrawing his guilty plea by filing a superseding indictment and a
      21 U.S.C. § 851 enhancement.

3.)   Counsel was ineffective for advising petitioner to withdraw guilty plea when he
      knew his co-defendant was actually arrested before him and would testify against
      him.

4.)   Petitioner's co-defendant was arrested prior to petitioner and therefore the
      Government committed Brady violations.

5.)   Counsel's ineffectiveness caused petitioner to be prejudiced by the loss of three
      levels for acceptance of responsibility and 4 levels for minor role in the offense.

6.)   Since petitioner's co-defendant was arrested 3 days prior to petitioner, the stop
      and search were predisposed.

7.)   The cumulative effects of these errors represent ineffective assistance of counsel
      and the denial of effective assistance on direct appeal.

8.)   Ineffective Counsel for failing to object to improper § 851 filing.

4

## Points on Ineffective Counsel

To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set forth by the United States Supreme Court in Strickland v Washington, 466 US 688, 104 S.Ct. 2052 L.Ed.2d 674 (1984). The first prong of the Strickland test requires that his counsel's errors were so egregious as to fall below an "objective standard of reasonableness." Id. At 687-88. In determining whether counsel's representation as objectively reasonable, "The court must indulge a strong presumption that counsel's conduct falls within wide range of reasonable professional assistance. Id at 689. Under the second prong of the Strickland test, the defendant must demonstrate that he or she was actually prejudiced by counsel's error. Strickland, supra 692-94. To establish prejudice, the defendant must also show that counsel's errors rendered the proceeding fundamentally unfair and unreliable. Lockhart v Fretwell, 506 US 364, 369 (1993).

The Supreme Court outlined the standard for an ineffective assistance of counsel claim by stating that the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. A new trial should be awarded if counsel was such a nature that the trial could not have been relied on as having produced a just result. Strickland, supra, 668, 684.

The Supreme Court further cautioned, however, that the two part test set forth in Strickland should not be applied rigidly, and courts using the test , "Should keep in mind that the principles....stated do not establish mechanical rules." Id at 696. Specifically, the court's

5

inquiry should focus "on the fundamental fairness of the proceeding in question produced a "just result."

The Sixth Amendment right-to-counsel guarantee recognized "the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty." Johnson v Zerbst, (1938) 304 US 458, 462-463. However, the Supreme Court has declined to establish a "cookie-cutter" test for ineffective counsel.  Wiggins v Smith (2003) 539 US 510, 521, 156 L.Ed.2d 471, 123 S.Ct. 2527, "[W]e have declined to articulate specific guidelines for appropriate attorney conduct..."

There is a difference between the commission of legal malpractice under state law, so as to create a civil cause of action against a lawyer that does not meet constitutional standards under the Sixth Amendment and therefore, that constitutes unconstitutional "ineffective assistance." The cumulative effect of Petitioner's Counsel's errors and omissions, combined with the lack of research through all proceedings, resulted in unconstitutional ineffective assistance of counsel at plea, trial, sentencing, and through appeal. The Strickland test is "applicable to ineffective assistance claims arising out of the plea process." . Hill v Lockhart, (1985) 474 US 52, 57, 88 L.Ed.2d 203, 106 S.Ct. 366. Constitutional challenges were constitutionally required of Petitioner's counsel at all stages of the criminal proceedings against him including on direct appeal based on the principles enunciated in In re Winship, 397 US 358, 364, 90 S.Ct. 1068, 1073, 24 L.Ed.2d 368 (1970);  Mullaney v Wilbur, 421 US 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); Jones v United States, 526 US 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999); Apprendi

v. New Jersey, 530 US 466, 129 S.Ct. 2348, 147 L.Ed.2d. 435 (2000); Ring v. Arizona, 536 US

584, 122 S.Ct. 2428, 153 L.Ed.2d. 556 (2002); Blakely v. Washington, 542 US 296, 124 S.Ct.

2351, 159 L.Ed.2d. 403 (2004); United States v. Booker, 125 S.Ct. 738, 160 L.Ed.2d. 621

(2005), Inter Alia.

The measure of the level of diligence and understanding of the law required of a criminal

Defense lawyer, does not require that he be persistent, but it does require that he raise every issue

that jurisprudential sources reasonably available might suggest as a matter of defense. This does

not mean that an issue that was not raised must, if it had been raised, have a guaranteed victory,

but does mean that if it had been raised, it would have added to the possibility of ultimate

victory, whether before the trial Court or the Supreme Court. U.S. v. Holland, 380 F.Supp. 2nd

1264, 1273 (N.D. Ala. 2005). Thus, a defendant requires an attorney's "guiding hand" through

every stage of the proceedings against him. Powell v. Alabama, 287 US 45, 53 S.Ct. 55 (1932).

The Supreme Court in two decisions following Strickland and Cronic: Wiggins v. Smith,

539 US 510, 156 L.Ed.2d. 471, 123 S.Ct. 2527 (2003), and Rompilla v. Beard, 545 US __, 162

L.Ed.2d. 360, 125 S.Ct. ____, (2005), further denied a defense attorney's investigative

responsibilities. In Wiggins, the Supreme Court held that:

> (1) "Trial Counsel's failure to investigate the accused's background and to present
> mitigating evidence of the accused's unfortunate life history at the accused's capital
> sentencing proceedings had violated the accused's right under the Federal Constitution's
> Sixth Amendment, to the effective assistance of Counsel, as such failure by trial Counsel

7

had (a) fallen below the standard of reasonableness under the prevailing professional norms; and (b) prejudiced the accused's defense." Id. At 472.

Wiggin's attorney claimed that his trial counsel rendered ineffective assistance of counsel by failing to **investigate** and present mitigating evidence of his dysfunctional background. The Supreme Court found that Wiggin's attorney's conduct and lack of investigation in "not to expand their investigation beyond a PSI", Id 478, "fell short of the professional standards prevailing in Maryland in 1989." Id 478. At the time petitioner's plea agreement and sentence and thereafter-direct appeal (petitioner filed pro se to the Supreme Court), the duty to investigate the allegation in a defendant's case, was guided by the ABA standards, Rompilla, page 375 n6 and 7. The Supreme Court stated in Rompilla, "The notion that defense counsel must obtain information that the State has and will use against a defendant is not simply a matter of common sense." Id 375. Justice Sourter goes on to quote from the Bar Association Standard:

> "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of a conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer or facts constituting guilt or the accused's stated desire to plead guilty. ABA Standard for Criminal Justice 4-4.1 (2nd ed. 1982)."

"We long have referred (to these ABA standards) as guides to determine what is reasonable." Wiggins, 539, US at 524 (quoting Strickland 466 US at 688).

Rompilla's attorneys were found to be ineffective by not investigating mitigating evidence at his capital punishment sentencing trial even after the "defendant's family members and the defendant himself have suggested that no mitigating evidence is available." Id at 369.

Petitioner's attorney did not establish the record, or preserve issues as Wiggins and Rompilla require.   Petitioner's attorney was ineffective and therefore caused petitioner's sentencing to be unconstitutional and more excessive than necessary, and failed to preserve the record.

In sum, the substance pursuant to the Strickland standard, as stated in U.S. v. Acklen, 47 F.3d 739 (5th Circuit 1995). "A criminal defendant can meet the prejudice prong of Strickland by showing he would have received a less harsh sentence absent counsel's unprofessional errors or omissions" see also Gray v. Greer, 800 F.2d 644

It is clear in the instant argument, but for counsel's unprofessional errors, a substantially less harsh sentence would have been imposed.

9

## Claim One

### Resentencing Pursuant to Booker

The petitioner moves the court with this initial claim that he should be resentenced in light of the United States Supreme Court ruling in Booker v. United States, 125 S.Ct. 738 (2005). This claim also ties into the ineffective assistance of counsel for his failures to preserve it properly and assert it on direct review and after the decision was rendered.

The court stated at resentencing, "If the sentencing guidelines are later determined to be Unconstitutional or Inapplicable, the court would sentence the defendant to 10 years in jail."

The court docket entry specifically states (see entry 204).

"ORDER"

"Order as to Isadore Gennings, pursuant to the hearing held on November 9, 2004. The court finds that the defendant is not entitled to a downward departure. Accordingly, defendant's sentencing remains at the two hundred forty (240) months originally imposed by this court on March 14, 2002. [148]"

"However, if the Federal Sentencing Guidelines are determined in the future to be UNCONSTITUTIONAL or ILLEGAL, the court imposes a sentence of one hundred twenty (120) months... signed by Judge S. Arthur Spiegel on November 16, 2004."

Since the aforementioned statement was ordered and issued by this court, Booker v. United States was decided. Which stated that the mandatory aspects of the Federal Sentencing Guidelines indeed violated the due process clause of the United States Constitution.

In a secondary decision by the Supreme Court in Booker, the guidelines were made advisory. Accordingly, the guidelines were ruled unconstitutional and inapplicable as applied to this petitioner. Hence, a clarification of this court's previous order is required and or implemented. Further, the U.S. Supreme Court just heard oral arguments in October 2006 in the cases of Cunningham and Burton, dealing with these questions raised previously and herein, and the retroactivity of Booker.

In light of this, the following argument must be asserted.

The Fifth Amendment to the United States Constitution provides that no person shall "Be deprived of life, liberty, or property without due process of law..." Similarly, the Fourteenth Amendment prohibits any state from depriving a person of liberty without "Due process of law." In addition, the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury."

Taken together, these amendments "Require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." (United States v. Gaudin (1995) 515 U.S. 506, 50-510; see also Mullaney v. Wilbur (1975) 421 U.S. 684, 698; In Re Winship (1970) 397 U.S. 358, 363-364.) Where proof of a particular fact exposes the defendant to greater punishment than that available in the absence of such proof, that fact is a element of the crime which the Fifth and Sixth Amendments require to be proven to a jury beyond a reasonable doubt. (Apprendi v. New Jersey, Supra 530 U.S. at p.490; Mullaney v. Wilbur, Supra , 421 U.S. at p.698; Specht v. Patterson (1967) 386 U.S. 605, 607; People v. Hernandez (1988) 46 Cal. 3d 194, 205.) Indeed, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

11

doubt." ( Apprendi v. New Jersey, Supra 530 U.S. at p.490) Gaudin, Wilbur, and Winship were already established at sentencing time, along with Apprendi. Accordingly, counsel had ample authority to object to petitioner's trial and sentence.

In Apprendi, defendant had been convicted of possession of a firearm for an unlawful purpose; a "second degree" offense punishable by imprisonment for between five and ten years. However, pursuant to New Jersey's hate crime statute, the trial court at sentencing found by a preponderance of the evidence that defendant had committed the crime with a purpose to intimidate individuals because of race. Under the hate crime statute, this finding increased defendant's sentence to between ten and twenty years of imprisonment. The United States Supreme Court held that although the New Jersey Supreme Court characterized the hate crime enhancement as a "sentencing factor," it was actually an element of the offense, which should have been decided by the jury. (530 U.S. at p.492) The increase in the prescribed statutory maximum penalty to which defendant was exposed violated his Fifth and Sixth Amendment rights because the factual determination which served to elevate his maximum statutory exposure had not been submitted to a jury and proven beyond a reasonable doubt. ( Id. At p. 490-492) Indeed, the Supreme Court concluded that all facts (other than the fact of a prior conviction) which increase the penalty beyond the prescribed statutory maximum must be found by a jury to exist beyond a reasonable doubt:

" It is unconstitutional for a legislature to remove from the jury assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt."
(Id At p.490, quoting Jones v. United States (1999) 526 U.S. 227. 252-253.)

12

Thereafter, in Ring v. Arizona (2002) 536 U.S. 594, The Supreme Court applied the holding of Apprendi to Arizona's death penalty law. Under Arizona law, the maximum punishment for first-degree murder was life imprisonment unless the trial court found beyond a reasonable doubt that one of ten statutory enumerated aggravating factors existed. The court held that defendant's death sentence under this law violated his right to a jury determination of guilt on every element of the crime charged. )Id. At p.589.) Thus, in line with Apprendi, the court found that the Sixth Amendment mandates that the existence of an aggravating factor necessary for the imposition of the death penalty: must be found by a jury rather than a sentencing judge. Id. At p. 609.

Most recently, the Supreme Court decided Blakely v. Washington, Supra,. In Blakely, defendant pleaded guilty to kidnapping his estranged wife while using a firearm. Under Washington law, the facts defendant admitted supported a prison sentence in the "Standard range" of 49 to 53 months.

However, Washington law also permitted the trial court to impose a sentence above the standard range if it found the existence of an aggravating factor demonstrating "substantial and compelling reasons justifying an exceptional sentence." (2004 WL 1402697 at p. 2) Pursuant to this latter provision, the trial judge imposed an exceptional sentence of 90 months based on a finding that the defendant had acted with "deliberate cruelty" in committing the kidnapping offense. Id. At p. 3-4.)

Once again applying the holding of Apprendi, the Supreme Court reversed defendant's sentence. The court first noted:

"The 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the

13

defendant. In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional facts." (Id. At p. 4. Emphasis in original.).

Applying this reasoning, the Supreme Court found that the statutory maximum sentence based solely on the facts defendant admitted in his guilty plea was the standard range of 49 to 53 months; the trial judge was prohibited from imposing the exceptional ninety month sentence on those facts alone. (Id. At p. 5) Consequently, the judge's imposition of an additional three years beyond the statutory maximum was based on a factual finding to which defendant never confessed and which no jury had ever found true beyond a reasonable doubt. (Ibid.) The imposition of the ninety month exceptional sentence therefore violated defendant's Sixth Amendment right to trial by jury. (Id. At p. 5-6.).

Thereafter, the Supreme Court decided Booker v. United States, 125 S.Ct. 738 applying Blakely to the Federal Guidelines. Had counsel raised an Apprendi type claim below, namely that the statutory maximum was the guideline range for just the drug quantity, the other aggravating factors would have exceeded that statutory guideline range, since no jury decided those aggravating factors. Accordingly, the Government clearly misses the point, the petitioner would have indeed received a sentencing remand.

Presently before the United States Supreme Court, in Cunningham v. United States, for this term, the following argument is before the court in regards to California's improper sentencing laws. An excerpt from that case states:

> "California's Determinate Sentencing Law employs a system of sentencing
> choices much like Washington's sentencing scheme in Blakely. Under Penal Code
> section 1170, subdivision (b), "When a judgment of imprisonment is to be imposed and

14

the statute specifies three possible terms, the court shall order imposition of the middle term unless there are circumstances in mitigation or aggravation of the crime." (Emphasis supplied; see also Cal Rules of Court, rule 4.420(a) ["The middle term shall be selected unless imposition of the upper or lower term is justified by circumstances in aggravation or mitigation."].)  Thus, under the Determinate Sentencing Law, the middle term is the presumptive sentence (see, e.g. People v. Arauz (1992) 5. Cal. App. 4th 663, 666 (Maj. Opn.) and 647 ( Conc. & dis. Opn. Of Yegan), or as in Blakely, the "statutory maximum" allowable for the particular offense.  In fact, a trial court need not even state reasons for imposing the middle term.  (People v. Arceo (1979) 95 Cal. App. 3d 117, 121.).

Furthermore, as in Blakely, the upper term may only be imposed where "exceptional" circumstances in the form of aggravating factors exist justifying a departure from the middle term.  (See, e.g. People v. Jackson (1987) 197 Cal. App. 3d 380, 390-391; Cal. Rules of Court , rule 4.420(b) ["Selection of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation."].)  Yet, the rules of court require only that the trial court find circumstances in aggravation by a preponderance of the evidence.  (Cal. Rules of Court 4.420(b); see also People v. Levitt (1984) 156 Cal. App. 3d 500, 515).

California Rules of Court, rule 4.421 sets forth a non-exhaustive list of circumstances which constitute aggravating factors.  In addition, rule 4.408(a) provides that for purposes of making discretionary sentencing decisions, the sentencing court may consider "additional criteria reasonably related to the decision being made." (Cf. Blakely v. Washington, Supra, 2004 WL 1402697 at p. 2 [Washington law providing "illustrative" list of aggravating factors which justify imposition of exceptional

sentence].) However, the rules of court make clear that in finding the existence of an aggravating factor, the court may not rely on a factor, which is an element of the crime. (Cal. Rules of Court, rule 4.420(d) ["A fact that is an element of the crime shall not be used to impose the upper term."]; See also People v. Fernandez (1990) 226 Cal App. 3d 669, 680 [Trial court erroneously relied on vulnerability based on young age of victim as aggravating factor in sentencing resident child molester because age range was specified in underlying offense]; People v. Quinones (1988) 202 Cal. App. 3d 1154, 1159-1160 [Trial court improperly aggravated sentence based on age of molest victim since age was an element of underlying offense]; cf. People v. Young (1983) 146 Cal. App. 3d 729, 733-734 {Finding prohibited dual use of facts in using firing of gun and threat of injury from gun as aggravating factors where gun use was basis of sentence enhancement].) Similarly, even where an aggravating factor technically is not an element of the underlying crime, the court may not rely on it where the factor is inherent in the crime. (See, e.g., People v. Young, supra , 146 Cal. App. 3d at p. 734 [Trial court improperly relied on "extreme serious nature of the offense" to aggravate defendant's sentence for assault with a deadly weapon since assault with a deadly weapon is "obviously" an extremely serious offense].) Consequently, under California's Determinate Sentencing Law, when a sentencing court finds the existence of factors in aggravation, it necessarily finds the existence of facts beyond which the jury found to exist in arriving at its verdict.

Penal Code Section 288.5 provides that one convicted of continuous sexual abuse of a child "shall be punished by imprisonment in the state prison of a term of 6, 12, or 16 years." (Pen. Code 288.5, subd.(a).) As Apprendi and Blakely make clear, the middle term of 12 years is the "statutory maximum" sentence that a judge may impose for a

16

section 288.5 conviction "solely on the basis of facts reflected in the jury verdict or admitted by the defendant " Blakely v. Washington, Supra, 2004 WL 1402697 at p. 4) Without the existence of additional aggravating factors, a departure from the middle term of 12 years, to the upper term of 16 years is unauthorized. (Pen. Code 1170 subd.(b); Cal Rules of Court, rule 4.420(a).)  However as Apprendi and Blakely also make clear, before any such aggravating factors can be used to impose the upper term, a jury must find them to exist beyond a reasonable doubt. (A) Here, the trial court usurped the jury's fact finding function when it found the existence of six aggravating factors for the purpose of imposing the upper term of 16 years.  Moreover, by operation of rule 4.420(b), the court based its findings on a preponderance of the evidence standard. Consequently, the trial courts imposition of the upper term based on the aggravating factors it found to exist violated Mr. Cunningham's Sixth Amendment right to a jury trial on the truth of those aggravating factors and his Fifth and Fourteenth Amendment rights to due process requiring that they be found true beyond a reasonable doubt." (B)

---

(A) In order to effectuate petitioner's constitutional right to have a jury determine the existence of aggravating factors beyond a reasonable doubt, petitioner had a corollary Federal due process right to have the jury properly instructed on his question. See: Gaudin, Wilbur, and Winship.

---

(B) In Blakely, the Supreme Court suggested that although the trial court cannot make factual findings regarding the existence of aggravating factors without a waiver from the defendant, the court still retains discretion to weigh such factors for purposes of departing from the maximum after a jury finds from them to exist.    Blakely v. Washington, 542 U.S. 296-301.

17

## The Constitutional Violations Require Reversal of Petitioner's Sentences.

Generally, the violation of a criminal defendant's constitutional rights warrants reversal unless the error is deemed harmless beyond a reasonable doubt. (See <u>Chapman v. California</u> (1967) 386 U.S. 18,24.) However, certain violations represent "Structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless error' standards," and therefore require reversal pro se. (<u>Brecht v. Abrahamson</u> (1993) 507 U.S. 619, 629, quoting <u>Arizona v. Fulminante</u> (1991) 499 U.S. 279, 307-309.)

The denial of a Jury trial is just a structural defect. (See, e.g., <u>Sullivan v. Louisiana</u> (1993) 508 U.S. 275, 281-282; <u>Rose v. Clark</u> (1986) 487 U.S. 570, 578; <u>People v. Ernst</u> (1994) 8 Cal. 4th 441, 449.) As the United States Supreme Court stated in <u>Rose</u>, because of the Sixth Amendment's clear command to afford jury trials in serious criminal cases, where that right is altogether denied, the error cannot be deemed harmless. (<u>Rose v. Clark</u>, Supra, 478 U.S. at p. 578 ["The error in such a case is that the wrong entity judged the defendant guilty."].)

Significantly, the United States Supreme Court has also found an error to be structural, and therefore subject to automatic reversal, where the trial court permitted the jury to convict the defendant based on a standard less than proof beyond a reasonable doubt. (<u>Sullivan v. Lousiana</u>, Supra, 508 U.S. at p. 282-282(3).

---

3. The Court in Sullivan noted the close interplay between the Fifth and Sixth Amendment rights at issue in this case:

"It is self evident, we think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and Sixth Amendment requirement of a jury verdict are interrelated. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is probably guilty, and then leave it up to the judge to determine (as Winship requires) whether he is guilty beyond a reasonable doubt. In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." (Sullivan v. Louisiana, Supra, 508 U.S. at p. 278.).

18

By finding the existence of aggravating factors based on a preponderance of the evidence, and not by a reasonable doubt, the trial court here subjected petitioner to increased punishment on an unconstitutionally low standard of proof, requiring reversal per se.

Given the nature of the constitutional violations at issue here, it is impossible to assess with any precision the harm caused due to the lack of a jury trial on the aggravating factors or the failure to require that those factors be found to exist beyond a reasonable doubt. The constitutional violations in this case must therefore be deemed "structural defects" under the **Brecht** taxonomy. No appellate court can or should speculate as to how the resolution of petitioner's sentencing would have differed had a jury been required to find the existence of aggravating factors beyond a reasonable doubt. Indeed, it is undoubtedly for these precise reasons that the court in **Blakely** and **Apprendi** reverse the defendant's sentences without requiring a showing of prejudice. (Blakely v. Washington, Supra, 2004 WL 1402697 at p. 10; Apprendi v. New Jersey, Supra, 530 at p. 497.) Consequently, reversal of the petitioner's sentence is required.

Moreover, even applying the harmless error standard enunciated in Chapman v. California, (1967) 386 U.S. 18, 2, respondent is unable to prove the constitutional violations harmless beyond a reasonable doubt. (See e.g., United States v. Neder (1999) 527 U.S. 1, 18 [Applying standard to trial court's failure to instruct jury on an element of the offense]; People v. Flood, Supra 18 Cal. 4th at p. 504-504 (same). In **Neder,** the United States Supreme Court held that in evaluating whether the failure to submit an element of the of the offense to the jury is harmless, a reviewing court must conduct a thorough evaluation of the evidence, and :

"If, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the

19

defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless."

At the sentencing hearing in this case, defense failed to contest the factors in aggravation. Pursuant to **Neder**, reversal is therefore required.

Further, as the petitioner explained in his memorandum, the aggravating factors which the trial court found to exist were inapplicable here, and as repeatedly noted above, the court based its findings relating to the aggravating factors on a preponderance of the evidence standard. Under these circumstances, there is not reason to believe that a jury applying the reasonable doubt standard would find any, let alone all, of these aggravating factors to exist. Accordingly, this court must agree, had counsel asserted a Sixth Amendment claim with existing law at the time, a remand was automatic, as **Blakely**, then **Booker** were decided during the life of petitioner's appeal. All those that asserted a Sixth Amendment claim were remanded, those who failed, lost pursuant to the plain error doctrine.

These are points the Government is in denial of, these are the points that give the performance and prejudice prongs of Strickland v. Washington, 466 U.S. 668 (1984).

The United States Supreme Court's recent oral arguments in Cunningham and Burton v. Waddington, No. 05-9222, (4) there, the justices overwhelmingly agreed the interpretations of Booker to mean the statutory maximum under the federal system to be, the low-to high end of the guideline range vested to the sentencing judge by either the verdict or what was admitted to. Not the statutes, statutory maximum as the Government believes. Since the accepted evolution

---

4.Cunningham was heard on October 11, 2006.  Burton was heard on November 7, 2006.

20

Of the law since petitioner's previous appeals, the matter must be re-looked. Notwithstanding, these principles must be explained during the plea for it to be considered knowing, intelligent and voluntary and/or to the jury. That was not done in this case.

Claim Two

Counsel Rendered Ineffective Assistance in Failing to Object and Assert the

Government Committed Retaliatory and Vindictive Prosecution Against the

Petitioner for Withdrawing His Guilty Plea by Filing a Superseding Indictment and

a 21 U.S.C § 851 Enhancement.

The petitioner asserts the Government committed retaliatory acts upon him and he was the victim of vindictive prosecution for exercising his rights to withdraw his guilty plea in the wake of threats upon his family and self, coupled with ineffective counsel all through these unfortunate proceedings.

The fact of these events are not in anyway conclusory. The record proves and highlights this claim.   For example, the original plea agreement the petitioner pled to contained no stipulations that a plea would curtail a § 851 filing or a superseding indictment.  (See guilty plea agreement attached.)  Once petitioner moved the court to withdraw his guilty plea, and this court granted this motion, the following events occurred.

1.  April 5, 2001 pled guilty.

2.  July 17, 2001 motion hearing to withdraw plea.

3.  July 26, 2001 plea reversed.

4.  July 31, 2001 pled not guilty.

5.  August 8, 2001 Government files superseding indictment incriminating only petitioner

21

6. August 24, 2001 Government files a 21 U.S.C § 851 sentence enhancement on petitioner.

In a three (3) week span, from July 17th when the plea was withdrawn, to August 24th when the § 851 motion was filed, an extensive number of events occurred; all of which were in a retaliatory manner. The Government offered up no reason why all of a sudden it took all of these punitive actions, other than that the petitioner enraged the prosecution by exercising his rights. Also counsel at no time objected to any of these events. The Circuit Court in Bragon v. Poindexter 249 F.3d 476 (6th Circuit 2001), stated that Government acts are unconstitutional if intended to penalize a defendant for exercising a constitutional right. The due process clause is violated if prosecution is brought in retaliation for defendant's exercise of his/her legal rights. Wilhack v. Halpin, 953 F2d 689 (1st Circuit 1991). Also stated in United States v. Wilson, 262 F3d 305 (4th Circuit 2001).

If the prosecutor seeks additional charges such as a superseding indictment or more punishment solely to punish a defendant, as in this case, due process is violated, if as here, it is done because the petitioner exercised a constitutional right.

Since the petitioner has shown with clear facts, based upon the record, that the Government during that three (3) week period in July- August of 2001, demonstrated retaliatory, selective prosecution on him, solely because he withdrew his guilty plea. The court in United States v. Brassford, 812 F2d 16-19 (1st Circuit 1987) "To obtain on evidentiary hearing, the defendant has a lesser burden and need allege only some facts (a) tending to show that he has been selectively prosecuted and (b) raising a reasonable doubt about the propriety of the petitioner's purpose." In the case at bar, sufficient evidence exists to show the Government's propriety tainted. Within two (2) weeks of petitioner's plea withdrawal, a superseding

22

indictment, a § 851 enhancement, withdrawal of a minor role reduction, and denial of the safety valve. See also <u>Jones v. White</u>, 992 F2d 1548 (11th Circuit 1993) "Doubt on Government's motive" requires an evidentiary hearing. In <u>Bragon v. Poindexter</u> 249 F.3d 476 (6th Circuit 2001), the court held prosecutors penalizing defendants for exercising a protected right is unconstitutional and gives rise to claims of vindictive prosecution. The United States Supreme Court in <u>Bordenkircher v. Hayes</u>, 434 U.S. 357 (1978) held that, "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort... ...and for an agent of the State to pursue a course of action whose objection is to penalize a person's reliance on his legal rights is "patently unconstitutional." The presumption of vindictiveness is there when prosecutor brought charges or enhancements carrying a potentially greater sentence, or presumption exists when a superseding indictment is filed. <u>U.S. v. Taylor</u>, 749 F2d 1511 and <u>U.S. v. Meyer</u>, 810 F2d 1242.

Accordingly, as has been demonstrated here, no motive can exist for the Government's actions, except for selective and vindictive prosecution in regards to the guilty plea withdrawal. Also the record demonstrates, counsel stood by idle and failed to **protect** his client. This court must remember the petitioner did not withdrawal his plea on constitutional error, but out of fear for his family.

Claim Three, Four, Five, and Six Combined

**Counsel was ineffective for advising Petitioner to withdraw guilty plea when he knew his co-defendant was actually arrested before him and would testify against him.**

---

Prior to Petitioner's trial, the defense moved the Court and Government with boiler-plate discovery motions. Specifically requesting that any favorable evidence be turned over to the defense. This obligation upon the Government included <u>Brady</u> requests, <u>Bagley</u> requests, and <u>Giglio v. U.S.</u>, 405 U.S. 150 (1972) material. These three standing principal Supreme Court cases obligate the Government to turn over favorable and non-favorable evidence. The Jenck's Act material under Rule 26.2 and Rule 12.

At trial the Petitioner through Counsel was unaware of the trial evidence and witness list, notwithstanding, the Petitioner was unaware pre-trial and pre-plea of how to proceed. As the record appears, the Petitioner was the victim of Counsel's investigative failures, and the Government's subterfuge.

What basically happened in this case is, the car upon which Petitioner was driving that fateful night, was already in the Government's cross hairs, so to speak. The Petitioner's co-defendant, Robert Addison, was arrested prior to the Petitioner's arrest, accordingly, Counsel pursuant to a little investigating, would have known that co-conspirators would testify.

A review of the Trial record clearly reveals inaptness with his evidence and advice to the Petitioner. In the Trial Transcripts, pages 152-200, also pages 35, 60,61,141\*, the record shows arguments concerning the Jencks material between all parties. The Government does not turn

---

\*Trial Transcript page references 35,60, and 61 are from day two of trial, November 14, 2001.

24

over the statement of each conspirator testifying until they take the stand, allegedly due to unsubstantiated threats on one witness, which Counsel never investigated or properly objected to.

Thereafter, it is realized by Counsel at pages 196-197**, that Counsel was advised in discovery that the co-conspirators were testifying. This was a crucial failure of Counsel. Namely where the Government specifically states to Counsel it intended to use statements pursuant to Federal Rules of Evidence, Rule 801(d)(2)(e).

Therefore, it is profoundly obvious Counsel did not properly advise the Petitioner about trial, or how to proceed, or would it be better to plead guilty and receive an Acceptance Departure. It is quite obvious that the Petitioner chose to go to trial since he was advised there would be no witnesses. Who would not go to trial under those circumstances?

However, had Counsel preformed his investigative duties as stated in Strickland, the first guilty plea would have stayed intact, or to say the least, the Petitioner would have re-pled and therefore limited the prejudice done to him.

The Petitioner incorporates claims 3 through 6 herein, as they are all related. The lynchpin being, Counsel did not properly know the Petitioner's co-conspirators were testifying, or that one was arrested prior to him, which all led to Brady violations, a predisposed stop and search of his car. All these errors led to substantial prejudice upon the Petitioner.

---

**Trial Transcript page references 151-200 from day one of trial, November 13, 2001.

25

When we look at the Government's comment at Trial Transcript, pages 167-197, it makes the whole picture clear.

Page 196-197

**"Mr. Brichler"**

**"I had filed a response in connection with Mr. Bishop's Motion for those- - -**
**- - - to produce evidence.  I provided him with discovery with all the items that we**
**were going to use in our case in chief, in my response; I state that.  And then it goes on to**
**say that it <u>does</u> - - <u>does</u> intend to use statements made by co-conspirators under Rule 801**
**(d) (2) (e) of the Federal Rules of Evidence as part of the conspiracy."**

At page 152-153 previous to the aforementioned discussion is the icing on the cake, so to speak, of how Counsel went terribly wrong.

See Mr. Bishop at 152, line 19,

**"On February 22nd, 2001, the Government submitted its response,**
**specifically stating that it intends to use items provided in discovery in the case in chief,**
**Document 25.  In addition, the Government <u>does</u> <u>not</u> intend to use statements made by co-**
**conspirators under Rule 801………"**

Now, the misinformation Trial Counsel had, which he misconstrued, was what he possessed prior to Petitioner's first plea, through to trial.  Accordingly, Counsel misunderstood the case in chief from the very beginning.

This extensive error, led to withdrawing the first plea, then proceeding to trial, then Counsel failing after he discovered the error on record, failed to advise the Petitioner to plea then and there if he wished to reduce the sentence.  Lets remember this is not the only evidence error, we had the previous arrests and surveillance of the co-conspirators prior to the Petitioner's arrest.

26

Therefore, claims 3-6 show extensive prejudice. All causing a much more severe sentence than was otherwise applicable. For instance, two levels for acceptance of responsibility at a minimum. Minor Role adjustments, and last but not least, Safety Valve adjustments  All of these sound departures were lost due to counsel misreading the February 22, 2001 response of the Government.

This is a classic case of ineffective Counsel. Both prongs of the <u>Strickland v. Washington</u>, 466 U.S. 668 (1984) test have been met. It is clear that Counsel's error(s) were so egregious that they fell below an objective standard of reasonableness. The Supreme Court's two recent visits to the ineffective forum, <u>Wiggens v. Smith</u>, 539 U.S. 510 (2003) and <u>Rompilla v. Beard</u>, 162 L.Ed.2d 360 (2005) both defined Counsel's responsibilities, and upheld the <u>Strickland</u> standard.

Accordingly, Counsel's failure to investigate, and be properly advised of the Government's discovery, also this Court misleading Counsel in its Order, all caused the Petitioner to:

1) Be given improper advice with the pleas and/or whether to go to trial.

2) <u>Brady</u> violations occurred by the Government's failure to disclose the arrests previous to his.

3) The prejudicial effect was so damaging, where Petitioner lost the 4 levels originally given for minimal role, 3 levels for acceptance, and 2 additional levels for the Safety Valve.

4) Counsel's failure to file suppression prior to the first plea, and be aware of the actual discovery.

27

5) The prior arrests obviously indicate the stop was predisposed; therefore the rest of the evidence was the "Fruit of a poisonous tree."

## Claim Seven

**The last part of the ineffective issue represents the combined effect of these errors/ The cumulative effect show or demonstrate the entire process untrustworthy, and would have had a different outcome with the proper advice of the defense Counsel.**

## Summary Of The Argument

The crux of the argument is that trial counsel failed in his investigative duties, which caused highly prejudicial errors. Had he known of the correct terminology of the Government's discovery, and properly advised this Petitioner, the § 851 Mandatory Minimum could have been avoided, and all of Petitioner's departures granted. The prejudice is manifest.

## The Cumulative Effect of The Errors

**If the Court feels any one of these errors does not by itself merit relief, the cumulative effect of them surely do.**

The Petitioner asserts the Court in <u>Crisp v. Duckworth</u>, 743 F.2d 580, held that when an attorney commits multiple acts and omissions that, taken as a whole, amounted to an ineffective assistance of counsel, the Court must examine each error individually. Then the Court must also consider their cumulative effect in light of the totality of circumstances. The Court based this

28

upon the language in <u>Strickland v. Washington</u>, 104 S.Ct. 15 2069, See also <u>Blackburn V. Faltz</u>, 828 F.2d. 1177.

> **"Defendant was denied the effective assistance of counsel based on combination of Counsel's erroneous legal advice concerning possible use of prior convictions if defendant testified, failure to obtain evidence to impeach witness."**

Also: <u>Henry v. Scully</u>, 78 F.3d 51 (2nd Circuit 1996) Cumulative errors amount to ineffective assistance. In the instant case we have substantial cumulative errors, for instance, Trial preparation, which includes witness knowledge, guilty plea advice, prior conviction investigation, § 851 objections, suppression hearing evidence, and investigation and preparation.

With a proper pre-trial investigation, the Petitioner could have avoided the most damaging prejudice, the § 851 enhancement. Accordingly, this matter deserves an evidentiary hearing to say the least.

### Claim Eight

### Ineffective Counsel For Failing To Object To Improper § 851 Filing.

The Petitioner additionally asserts in conjunction with claim 2, that the § 851 enhancement, that counsel had a limited time to object to, failed to do so, when in fact, a high probability existed that said objection would have prevailed.

It is more likely than not, the prior conviction listed by the Government in its August 24, 2001 § 851 Notice did not meet the criteria pursuant to 21 U.S.C. § 851. The Government attached thereto a docket sheet from the Cook County Circuit Court implying a valid § 851 type

29

charge existed. The Government's notice to the Court did not have, as required by § 851, a certified copy of the conviction. The Cook County docket sheet did show the original arrest was amended, but not what it was amended to. The docket sheet does not clarify that on September 26, 1991 the charge was amended, no indication exists what it was amended to. Before the Court can enhance pursuant to 21 U.S.C. § 851, it must have a certified copy of the prior conviction of a felony drug distribution. The docket sheet gives no indication of that criteria.

**Section 851(a)(1) states that:**

> **No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the Court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. (Emphasis added)**

Accordingly, to increase the punishment for a federal drug conviction because of one or more prior felony drug convictions, "The United States Attorney must file a pretrial information noticing the previous drug convictions upon which the Government intends to rely." United States v. Harden, 37 F.3d 595 (11th Circuit, 1994). The Court has described the nature of the "information" which is to be filed pursuant to this statute:

> The "information" referred to here is, of course, an information in the legal sense: a complaint or accusation presented against a person and charging a criminal offense, filed at the discretion of a proper law enforcement officer of the Government, but without the intervention of

30

a Grand Jury. In short, it is a formal charge of a criminal offense. <u>United States v. Olson</u>, 716
F.2d 850 (11th Circuit, 1983).

The Eleventh Circuit "Has insisted upon strict compliance with the mandatory language
of the procedural requirements of sections 851(a) and (b)." <u>United States v. Weaver</u>, 905 F.2d
1466 (11th Circuit, 1990) citing <u>United States v. Noland</u>, 495 F.2d 529 (5th Circuit) Cert. Denied,
419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181 (1974). Significantly, "the doctrine of harmless
error does not apply" with respect to failures to follow the statutory scheme of § 851. <u>Weaver</u> at
1479 citing <u>United States v. Olson</u>, 716 F.2d 850, 852 (11th Circuit, 1983).

Pursuant to § 851 the notice of enhancement filed by the Government is clearly defective
insofar as it fails to state "in writing the previous convictions to be relied upon." 21 U.S.C. §
851, what the charge was amended to was never stated to the Petitioner, therefore compliance is
void.

The Government will argue that the notice filed is sufficient. See <u>United States v.</u>
<u>Belanger</u>, 970 F.2d 416 (7th Circuit, 1992), where the Seventh Circuit held that the filing by the
Government of a notice to seek enhanced sentence and the subsequent **filing** of a pretrial notice
of intent to offer evidence of prior felony conviction satisfied the requirements of the statute.

The 11th Circuit and others have insisted on strict compliance with the statute and the
filing of a defective notice does not satisfy the statute regardless of a later filing of the priors as
part of a discovery response. Second, the circuit has provided a stricter definition of the
information which is required to be filed. It has equated the notice of enhancement to a "formal
charge of a criminal offense." <u>Olson</u> at 851. Like a formal charge, an otherwise defective notice
of enhancement cannot, and should not, be corrected by a discovery response. Third, in
<u>Belanger</u> the criminal priors were filed with the Court. In the instant case, the criteria of § 851

31

was not complied with. The plain reading of § 851 clearly states that "the United States attorney files an information with the Court… stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851 and advise the Petitioner of his rights.

The fact that the Petitioner may have been aware of the Government's intent to enhance his sentence and his knowledge of a possible prior that the Government intended to rely on does not relieve the Government from properly asserting the information. As the Court has stated:

> Even when the Defendant was not surprised by the enhanced sentence, was aware from the outset that his previous conviction could lead to an enhanced sentence, never challenged the validity of the prior conviction, and admitted it at the sentencing hearing, the statute prohibits an enhanced sentence unless the Government first seeks it by properly filing an information prior to trial
>
> United States v. Weaver, 905 F.2d 1466 (11th Circuit, 1990) citing United States v. Noland, 495 F.2d 529 (5th Circuit) Cert. Denied, 419 U.S. 966, 95 S.Ct. 228, 42 L.Ed.2d 181 (1974).

Assuming arguendo that the information filed by the Government satisfies the requirements of § 851(a) the Court failed to make the inquiry required by § 851(b).

Section § 851(b) provides as follows:

> If the United States attorney files an information under this section, the Court shall after conviction, but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as

32

> alleged in the information, and shall inform him that any challenge
> to a prior conviction which is not made before sentence is imposed,
> may not thereafter be raised to attack the sentence. 21 U.S.C. § 851(b)

No such inquiry was made by the Court; nor did the Court advise the Petitioner his right to challenge his prior conviction. Therefore a new sentencing hearing is necessary to permit the Court to comply with this section. <u>United States v. Cevallos</u>, 538 F.2d 1122 (5th Circuit 1976) cf. <u>Weaver</u> at 1482.

Also, where Court of Appeals could not conclude either that a defendant appreciated his ability to challenge his prior conviction for sentencing purposes or that any challenge to a prior conviction would have been futile, District Court's failure to follow colloquy requirement of 21 U.S.C. § 851(b) before enhancing sentence pursuant to 21 U.S.C. § 841 (b) could not be considered harmless and remand for re-sentencing was required. <u>United States v. Ruiz-Castro</u>, 92 F.3d 1519 (10th Circuit, 1996) and see: 45 Fed. Rules of Evidence Procedure 691, 35 FR. Serv.3d. 769.

Other courts have further stated that proper advisement and service, with Certified Copy of Conviction is a jurisdictional prerequisite. <u>United States v. Galiczynski</u>, 44 F.Supp.2d 707 (3rd Circuit, 1999)

The ritual required by 21 U.S.C. § 851(b) is a functional one, and its omission can result in very real prejudice to a defendant who learns only after he attempts to challenge a prior conviction that the conviction has become unassailable. <u>United States v. Cevallas</u>, 538 F.2d 1122 and 954 F.2d 37 (1999), 268 F.3d 850 (2001).

Accordingly, the strict requirements of § 851 of proper notice, service, certified documents, have not been met. Notwithstanding, the prior used without objection of counsel, no

33

one knows what it is. The Certified Docket sheet submitted by the Government, does not in any way comply with § 851 or due process. To say the least, a Certified Docket sheet cannot stand as a copy of a valid prior drug felony as required by § 851, especially since the alleged charge was amended/reduced to a charge no one is aware of. The prejudice is very extreme here, since it represents a 20 year mandatory minimum. There is once again, no viable excuse for Counsel's failure to object, force the Government's burdens, and disallow the use and/or defective service of the notice.

Support of Petitioner's contention that the record of his prior conviction is insufficient, can be found in this Court's order of June 26, 2001. [See attached order] The Court states on page 4 the following: [this order stems from the granting of the guilty plea withdrawal motion.]

"...The Court only has a record of a single criminal conviction over seven years ago. The Court has no record of whether or not Defendant pled guilty or was convicted by a jury. The Court also does not have any information regarding whether Defendant was represented by an attorney in that case."

In sum, the Court cannot use the § 851 notice, as it fails in every aspect, and denied due process in every aspect.

34

## **Conclusion**

Wherefore, based upon the aforementioned claims, individually or cumulatively, the Petitioner has stated cognizable issues pursuant to § 2255

Petitioner's § 851 enhancement should be vacated due to vindictive/selective prosecution and/or due to the prior conviction relied upon is invalid and Counsel failed to pursue a winnable claim. In light of Booker and the other related claims, this matter should proceed further.

Respectfully submitted,

Date: _____ ,2007

Isadore Gennings
# 03394-061
FCI Loretto
P.O. Box 1000
Loretto, P.A. 15940

35

## Certificate Of Service

I, Isadore Gennings hereby certify that I have caused to be served a true copy of Petitioner's Memorandum of Law upon the following by United States Mail, addressed to:

U.S. Attorney's Office
Robert Brichler, A.U.S.A.
221 E. Fourth Street, Suite 400
Cincinnati, Ohio 45202

Respectfully submitted,

Date: _3 - 27 -_ ,2007

Isadore Gennings
# 03394-061
FCI Loretto
P.O. Box 1000
Loretto, P.A. 15940